991 F.2d 792
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ron JEFFRIES, a/k/a Rodney Maurice Johnson, Defendant-Appellant.
 No. 92-5020.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 3, 1993
Decided: April 16, 1993
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Richard C. Erwin, Senior District Judge. (CR-91-184-G)
 Susan Hayes, Greensboro, for Appellant.
 Michael Francis Joseph, Assistant United States Attorney, for Appellee.
 Richard A. Elmore, PFAFF, ELMORE & ALBRIGHT, Greensboro, North Carolina, for Appellant.
 Robert H. Edmunds, Jr., United States Attorney, James A. Gleason, Law Student, DUKE UNIVERSITY SCHOOL OF LAW, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before HALL, Circuit Judge, POTTER, United States District Judge for the Western District of North Carolina, sitting by designation, and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 The Defendant, Ron Jeffries, was found guilty by a jury of a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), possession with intent to distribute cocaine base ("crack"), and sentenced to eighty months imprisonment, four years supervised release, and ordered to pay $50.00 special assessment.
 
 
 2
 The Defendant-Appellant contends that the District Court erred:
 
 
 3
 1. By stating out of the hearing of the jury a belief that the defendant was guilty and by asking defense counsel whether he had advised the defendant regarding perjury prior to defendant's testifying;
 
 
 4
 2. By denying defendant's motion for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure; and
 
 
 5
 3. By shifting the burden of persuasion to defendant to show no obstruction of justice and assessing an upward adjustment for obstruction of justice pursuant to Section 3C1.1 of the Federal Sentencing Guidelines.
 
 
 6
 We affirm.
 
 
 7
 The Government's evidence tended to show that Christopher Smith became friends with the Defendant. On July 29, 1991 the Defendant came to Smith's apartment and asked to spend the night with him. The Defendant brought an American Tourister luggage bag with him, two beepers and a portable telephone. The next morning Smith saw Defendant cutting up "crack" cocaine. A few days later the Defendant came to Smith's family-owned hardware store and showed Smith two ounces of crack cocaine, and told Smith he had just brought the crack from Virginia. He also told Smith he carried a nine millimeter gun and had other guns.
 
 
 8
 Smith, who had previously worked as an informant in Alamance County, North Carolina, and in South Carolina, told law enforcement officers about the Defendant. Later Smith told law enforcement officers that the Defendant wanted Smith to go to Virginia with him to purchase 12 ounces of crack. The law enforcement officers advised Smith to proceed and keep them informed. Smith then drove Defendant to Newport News / Virginia Beach area in Smith's car. Before leaving, Smith saw Defendant with a wad of money an inch to two inches thick with a $100.00 bill facing outward. Defendant's beeper went off repeatedly upon arriving at Virginia Beach.
 
 
 9
 Prior to leaving Virginia, Defendant put crack into his American Tourister bag.
 
 
 10
 Smith was able to contact Alamance County Sheriff's office from Durham. Near Burlington, Sheriff's Department detectives stopped Smith's car.
 
 
 11
 The American Tourister bag, which the Defendant admitted was his, was found in the back seat of the car. It contained 16.3 grams of crack cocaine with an estimated street value of $2,400.00, packaged in plastic bags for street-level distribution, as well as personal items and some marijuana. A set of keys found in the luggage fit Defendant's car. There was no other luggage in the car.
 
 
 12
 A consensual search of Defendant's apartment revealed a set of quarter gram digital scales on a closet shelf beside a bank card with Defendant's name, and a personal identification card with Defendant's name and picture. The scales had trace amounts of cocaine on them. A bottle of Inositol, a cutting agent for cocaine, was also found on the closet shelf.
 
 
 13
 At the conclusion of the Government's evidence, Defendant was sworn and the following colloquy occurred:
 
 
 14
 THE COURT: Mr. Elmore, may I ask you a question up here, please?
 
 
 15
 (Bench conference on the record)
 
 
 16
 THE COURT: Have you explained perjury to this witness?
 
 
 17
 MR. ELMORE: Yes, Your Honor. He has indicated that he desires to testify.
 
 
 18
 THE COURT: I didn't ask you that. Have you explained perjury to this witness?
 
 
 19
 MR. ELMORE: Explained? I told him he would be sworn, but not as far as penalties, no.
 
 
 20
 THE COURT: Well, it looks like he's not going to do right, so we might as well tell him. Now, the question is how can we tell him? I'll let him come back over there to the table and you tell him.
 
 
 21
 MR. ELMORE: Either that or a recess.
 
 
 22
 THE COURT: No; I want to get this case over today. We can recess in a few minutes. Just call him over there and talk to him and tell him what perjury is. I don't want him to get up here and make a mistake.
 
 
 23
 MR. ELMORE: Okay.
 
 
 24
 (End of bench conference.)
 
 
 25
 THE COURT: [Addressing Defendant] Come down a minute and go back over to your counsel's table, please.
 
 
 26
 ....
 
 
 27
 MR. ELMORE: Your Honor, could we approach?
 
 
 28
 THE COURT: Yes, sir; come up.
 
 
 29
 (Bench conference on the record.) [Both parties are present.]
 
 
 30
 THE COURT: Yes, sir?
 
 
 31
 MR. ELMORE: Your Honor, we had discussed him testifying on many occasions. He now informs me that he would not choose to testify.
 
 
 32
 THE COURT: He doesn't look like a guy that's going to testify. Didn't you know that from the beginning?
 
 
 33
 MR. ELMORE: Your Honor, to my knowledge he has no prior record.
 
 
 34
 THE COURT: The truth; he's afraid of the truth. The truth is his problem. I think he's caught and he knows it, and he's not going to lie and create further problems.
 
 
 35
 MR. ELMORE: He doesn't want to do anything that would enhance his penalties.
 
 
 36
 THE COURT: All right. Thank you.
 
 
 37
 During the trial, at another bench conference out of the hearing of the jury, when the Assistant United States Attorney stated to the Court that he had additional items found in the Defendant's girlfriend's apartment, the Court made the following statement to the Assistant United States Attorney: "If you don't have him tied now, you might as well take a voluntary non-suit."
 
 I.
 
 38
 The Defendant contends the Court stated during trial its belief that the Defendant was guilty by saying to the Assistant United States Attorney: "If you don't have him tied now, you might as well take a voluntary non-suit." This was a bench conference out of the hearing of the jury concerning the proposed introduction of more evidence by the Government, after a plethora of evidence by the Government. This assignment of error is nonsense. The judge only expressed his opinion that the Government had produced sufficient evidence when considered in the light most favorable to the Government to allow the case to go to the jury for its consideration without the necessity of producing more evidence.
 
 II.
 
 39
 Defendant's contention that he was deprived of his right to present witnesses in his behalf because the judge, out of the hearing of the jury, asked defense counsel if he had explained to the Defendant the penalties for perjury is without merit. There was no coercion on the part of the court or threats of dire consequences if the Defendant did lie, as in Webb v. Texas, 409 U.S. 95 (1975).
 
 
 40
 In view of the evidence and circumstances of this case the district court merely tried to make certain that the Defendant understood that testifying falsely could result in penalties. Further, this was accomplished through counsel, not by the district court.
 
 III.
 
 41
 As to the denial of Defendant's Fed. R. Crim. P. 29 motion for acquittal, there is more than sufficient evidence in the light most favorable to the Government for a rational finder of fact to have found the essential elements of the crime for which the Defendant was charged beyond a reasonable doubt.
 
 
 42
 The court heard the detailed testimony of Smith, the Defendant's admission that the luggage found in Smith's car during the traffic stop by Alamance County Sheriff's deputies was Defendant's luggage, the evidence that the keys in the luggage fit Defendant's car, and that there was crack cocaine found in the Defendant's luggage, Smith's testimony that Defendant put the crack cocaine in his luggage before leaving Virginia, the digital scales with cocaine residue found in Defendant's apartment, together with a bottle of Inositol, and Defendant's identification card. Finally, there was the amount of crack cocaine in Defendant's luggage-16.3 grams, and the statement by Defendant to Smith that he asked Smith to go to Virginia with him to purchase twelve ounces of crack.
 
 
 43
 The elements of the crime with which the Defendant was charged are:
 
 
 44
 1. That the Defendant possessed cocaine.
 
 
 45
 2. That he possessed it with intent to distribute it.
 
 
 46
 3 That he acted knowingly and intentionally.
 
 
 47
 The evidence was that the Defendant possessed the crack cocaine which was in luggage that he admitted was his. That he possessed it with intent to distribute it can be inferred from the possession of two beepers, a portable telephone, the amount of crack cocaine, the scales in the apartment, the Inositol found in the apartment, and the other testimony in the trial. That he did so intentionally and knowingly may be inferred from the testimony that Defendant placed the cocaine in his American Tourister luggage. In short, there was sufficient evidence for a rational fact finder to find that the Government had proved all the elements beyond a reasonable doubt.
 
 IV.
 
 48
 Turning to the assignment of error in assessing an upward adjustment for obstruction of justice under Section 3C1.1 of the Federal Sentencing Guidelines, once again this Court finds no error. The Defendant contends on page 14 of his brief that the Defendant was not given an opportunity to rebut the probation officer's finding in the presentence report that there should be an upward adjustment for obstruction of justice, and the court's finding that there was obstruction of justice on the part of the Defendant.
 
 
 49
 At the sentencing hearing, the Government offered evidence through the probation officer that the Defendant had denied any arrests or convictions other than two no-operator's license offenses. The probation officer further testified that Defendant had been arrested in 1991 in Newport News on charges of possession with intent to distribute cocaine and possession of marijuana, and giving a false name at the time of arrest. The probation officer further testified that this was a material misstatement because charges pending against a defendant would be grounds for upward departure, especially because the pending charges were similar to the instant drug charge offense. The probation officer further testified the Defendant gave a false address. The Defendant did not offer any evidence at the sentencing hearing. The Defendant objected that he had no notice that the Government was going to introduce evidence concerning Defendant's statement to the probation officer that he had been living with an aunt, Gloria Royster, whom it turned out was not an aunt. In any event, Gloria Royster denied that the Defendant had lived at her residence.
 
 
 50
 The Government is not required to give notice of the type of evidence it is going to present on an obstruction issue. Here, the Defendant had notice in the presentence report that the Defendant had lied about his place of birth, his age, and about living with his aunt, as well as the obstruction of justice claim presented in the presentence report. This was sufficient notice to Defendant.
 
 
 51
 Jeffries' conviction and sentence are accordingly affirmed.
 
 AFFIRMED